SAMUEL, Judge.
This is a workmen’s compensation suit for permanent and total disability resulting *487 from a gunshot wound sustained by plaintiff, who was employed as a stock and delivery man for a food store. Defendant is the compensation insurer of plaintiff’s employer. Also involved is a third party petition, filed by defendant against Earl Ruth (Jr.), who in fact shot plaintiff, and Ruth’s alleged employer, Ernest Perret (Jr.), which petition seeks judgment against the third party defendants to the extent of any judgment which might be rendered against the original defendant.
There was judgment in the trial court in favor of Albert Long and against Hardware Mutual Insurance Company for compensation at the rate of $35.00 per week for a period not to exceed 400 weeks and for medical expenses, which judgment dismissed Long’s claim for penalties and attorney’s fees. Judgment was also awarded, on the third party petition, in favor of Hardware Mutual and against the third party defendant, Earl Ruth (Jr.), as prayed for; the third party complaint was dismissed as to the other defendant, Ernest Perret (Jr.). Hardware Mutual has perfected this appeal from the judgment against it in the original suit and Albert Long has answered the appeal praying that the judgment be amended by awarding him penalties and attorney’s fees. No appeal has been taken from the judgment on the third party petition and that judgment is not before us.
The medical aspect of the case is not in dispute. Plaintiff was shot in the abdomen and underwent major surgery, an exploratory laparotomy. He sustained penetrating wounds to the liver and upper part of the intestines, specifically the duodenum. As a result of the gunshot wound, or the operation, he later developed a calcification or ectopic bone formation some 22 centimeters in length along the abdominal wound, a very rare condition which would require later removal by surgery. All of the medical testimony is to the effect that plaintiff is unable to do his regular and usual work and is permanently and totally disabled under the statute. The only question thus presented to us is whether or not the injury was incurred during the course of, and arose out of, plaintiff’s employment.
As usual there are some conflicts in the testimony, with which conflicts we are concerned in only two material instances. Plaintiff contends that he drove his employer’s truck to a service station for the purpose of obtaining brake fluid for that truck, while the defendants contend that his visit to the service station was a venture for his own pleasure, unconnected with his employer’s business. Plaintiff also contends that he went into the garage area at the request of one of the third party defendants, and this is denied. Defendants claim that he entered the garage area voluntarily, at the suggestion of no other person, and solely for his own personal reasons.
We have resolved these conflicts in favor of plaintiff after a careful consideration of all the testimony and evidence, and we conclude, as we believe also' did the trial judge, that the pertinent facts are as follows:
Plaintiff was an uneducated, 30 year old negro with defects of both speech and hearing. Part of his duties consisted of driving a truck, owned by his employer, for the purpose of making deliveries. He was required to maintain the truck and have the same serviced when needed. On the day of the shooting incident the truck’s brakes were not working properly and he drove to the service station with which he customarily did business for the purpose of purchasing a supply of brake fluid. Upon entering the station, both attendants being then busy with another vehicle, he drove to the station “island” so that he could wait until their work had been completed without obstructing the area near the gas pumps. After he had gotten out of his truck, and while he was waiting to be served, a man who worked in a garage located in the rear portion of the building occupied by the service station told him that he had something to show him and asked *488 plaintiff to go back into the garage. Plaintiff complied.
Upon entering the garage plaintiff saw the defendant Ruth, who worked in the garage on a part-time basis and was regularly employed as a mechanic by the New Orleans Police Department. Ruth produced a gun which he proceeded to unload and then reload with one cartridge. Ruth informed plaintiff that he was going to play “Russian Roulette”, spun the cylinder of the gun and pulled the trigger while the gun was aimed in the direction of plaintiff who was several feet away. The cartridge exploded and plaintiff was struck in the abdomen.
During the previous evening plaintiff had been in a car with a group of other people and had stopped at the service station to get gas. At that time Ruth had engaged in some horse play with a gun and one of the group had asked Ruth, in a joking manner, if it was a cap pistol. The garage mechanic pointed out by plaintiff as the man who asked him to go back into the garage the •following day also was present. Defendants base their argument that plaintiff was .engaged on a venture of his own solely on this incident, contending that plaintiff returned to the station and went into the garage the next day only for the purpose of continuing the conversation with Ruth about guns. However, the record contains evidence and documentary proof to the effect that the truck’s brakes were not in good condition. Brake fluid had been purchased and used in the truck three days before the shooting incident and was again purchased and used on the day following that incident.
We are satisfied that plaintiff stopped at the service station on the day of the shooting for the sole purpose of purchasing brake fluid for the truck. We also conclude that the shooting was accidental, the result of a very bad and dangerous practical joke, and that plaintiff did not know what was going to be shown to him when he was told to go into the garage. The whole shooting incident took only a few minutes and we are of the further opinion that plaintiff did not have any reasonable opportunity to leave after the gun was displayed by Ruth.
An accident or injury occurs in the course of an employment when it takes place during the time of such employment. Como v. Union Sulphur Co., La.App., 182 So. 155; Kern v. Southport Mill, 174 La. 432, 141 So. 19.
Therefore, plaintiff was clearly in the course of his employment unless leaving the vicinity of the truck and going into the garage in the rear portion of the building constitute such a deviation as to place him outside of that “course of employment”. We do not believe that it did. We are unable to conclude that he went on a venture for his own pleasure, foreign to his duties as an employee, because of the fact that he had no knowledge of what was going to be shown to him in the garage at the time the mechanic informed plaintiff that he had something to show him. As far as plaintiff’s knowledge on the subject was concerned, what was to be shown could have had some relation to plaintiff’s work or his employer’s business. In addition, he was required to wait until the station attendants were able to take his order and in a very real sense the rule set out in those cases dealing with stand-by periods is applicable here.
Our courts have consistently held that during a stand-by period any act, not unreasonable, such as would be expected of an ordinary person under the same circumstances, will not place the employee outside the course or scope ot his employment. See Malone La. Work Comp., § 164; Marie v. Dennis Sheen Transfer, Inc., La.App., 134 So.2d 407, 412; McClendon v. Louisiana Central Lumber Co., 17 La.App. 246, 135 So. 754.
The act of plaintiff in going into the garage was natural, reasonable and such as would be expected of an ordinary person under similar circumstances.
*489 In support of his contention that the accident arose out of his employment, plaintiff relies chiefly on the case of Livingston v. Henry & Hall, La.App., 59 So.2d 892. In that case the victim, who was employed in road construction work, was killed by the husband of a woman with whom he had been associating. The assailant was in a truck on his way to try to effect a reconciliation with his wife and as he passed that place on the road where the victim was working he stopped the truck and called the victim. The latter went to him and was shot and killed. The rationale of the case, based upon the “time-place” test of Kern v. Southport Mill, 174 La. 430, 141 So. 19, as well as (concurring opinion) the “zone of special danger” doctrine of Edwards v. Louisiana Forestry Commission, 221 La. 818, 60 So.2d 449, is that the shooting arose out of the employment because of the fact that, except for the employment, the victim would not have been at the particular place on the exact date of the occurrence. There was a dissent based primarily on the objection to such an extension of these theories and the fact that the peril was induced by the wrong doing, or suspected wrong doing, of the employee, the latter reason, of course, not being present in the instant case.
While we would not be willing to apply the Kern or Edwards test to the extent applied in Livingston, each compensation case must stand on its own facts and we are of the opinion that the accident here involved occurred during the course of, and arose out of, plaintiff’s employment.
In his answer to this appeal plaintiff seeks the statutory penalty and attorney’s fees provided for by LSA-R.S. 22:-658. Under that statute the insurer becomes liable for such penalty and attorney’s fees upon its failure to make timely payment of the claim”. * * * when such failure is found to be arbitrary, capricious, or without probable cause, * * * ”, The instant case presents a close question and the defendant-insurer was well within its rights in resisting the claim. Clearly its failure to pay, based as it was on substantial bona fide factual and legal contentions, was not arbitrary, capricious or without probable cause. See Welch v. Newport Industries, La.App., 86 So.2d 704, 708.
For the reasons assigned, the judgment appealed from is affirmed, defendant to pay all costs.
Affirmed.