DOMENGEAUX, Judge.
Defendant, Fireman’s Fund Insurance Company, the workmen’s compensation in *48 surer of plaintiff, Joseph E. Dangler’s employer, appeals the judgment refusing to order Dangler to submit to a second surgical procedure on the middle finger of his right hand. Dangler is currently receiving workmen’s compensation benefits, and it is agreed that he is disabled within the in-tendment of the compensation law in view of the present condition of his finger.
The sole issue is whether Dangler should be ordered to undergo a second surgical procedure as a condition for continuation of workmen’s compensation benefits.
Dangler was injured on June 25, 1974, in the course and scope of his employment as a tire re-capper. A large tire rim fell and injured, among other things not here relevant, the middle finger of his right hand. He was treated by Dr. Laudislas Lazaro, III, an orthopedic surgeon and, in time, enthusiastically submitted to a fusion operation to repair the joint to the distal phalanx of the injured finger. The operation was unsuccessful and Doctor Lazaro recommended a second fusion type operation, this one involving a bone graft. Fireman’s Fund tendered the operation, and Dangler refused. Plaintiff was then examined by Dr. Rodney E. Landreneau, Jr., a general surgeon, who recommended against a second fusion and suggested instead that the finger joint be amputated.
The trial was held on July 29, 1975, at which time certain stipulations were entered into, and the only oral testimony taken was that of the plaintiff. Doctor Lazaro’s deposition, which had been taken on June 3, 1975, was submitted, and the case was left open for the taking of the deposition of Doctor Landreneau, which took place on September 16, 1975. It is evident from the record that the parties and their attorneys as well as the trial judge were cognizant of Doctor Landreneau’s medical conclusions and recommendation of amputation even though same had not yet been reduced to writing by deposition at the time of trial.
On October 31, 1975, the trial judge issued the following reasons for judgment:
“The matter of whether or not plaintiff should undergo surgery for fusion of the distal joint and the two distal phalanges of the middle finger of plaintiff’s right hand has been submitted to the Court on the depositions of Dr. Lazaro, an orthopaedic surgeon and Dr. Rodney Landreneau, who is a general surgeon.
The depositions show that an attempt by Dr. Lazaro to fuse the joints of the finger in a first operation were unsuccessful. The deposition of Dr. Lazaro reveals that success could not be guaranteed on the second surgery.
The deposition of Dr. Rodney Landre-neau indicates that he is of the opinion that there would be no more than 50% chance of successful surgery on an attempted second fusion, and that a great deal of pain would be involved in the operation. Dr. Landreneau is of the opinion that the most reasonable thing to do would be to amputate plaintiff’s finger.
Certainly the Court will not order an amputation of this finger. Further, because of the inclusiveness [sic] of the results of a second surgery, and the incident pain thereto, and because of plaintiff’s strong reluctance, you might say adamant refusal, to undergo the surgery, the Court is not prone to order same.
Accordingly, the request for an order to plaintiff to undergo surgery is denied.”
In the case of Bass v. Service Pipe Trucking Company, Inc., 289 So.2d 78 (La.1974), the Supreme Court set out the general criteria as to whether an employee’s refusal to submit to surgery is reasonable as follows:
“ T. Can it be reasonably assumed that the operation will relieve the sitúa *49 tion and permit the claimant to resume the type of work he was performing at the time of the accident?
‘2. Will the operation submit the claimant to a minimum of danger and be in no sense dangerous to his life or be attended by no unusual risks and is it attended with but slight pain ?
‘3. Is there no serious disagreement among the surgeons as to the necessity for the operation or the type of operation to be performed, and the probability that the disability will be cured without recurrence ?’ ”
The record as made up in this case shows a disagreement between the two physicians as to the type of operation to be performed, and therefore is non-conforming to the third criteria of Bass, supra.
Doctor Lazaro, based on his previous experience with and knowledge of the type fusion which he performed on plaintiff, indicated that a fusion enjoys about a 95 per cent success rate, but he had no ready explanation for its non-success in this case. He admitted that the possibility of failure in the second operation is at least as great as in the first. The physician considered the fusion to be a major operation, but of course not as serious as a back operation, for example.
Doctor Landreneau recommended against a second fusion, opining that a second attempt would submit plaintiff to unnecessary suffering and believed that the possibilities of success on a second fusion would be no greater than 50 per cent. Instead, this surgeon suggested that the joint be amputated requiring the removal of approximately one and one-half inches of the end of the finger. The operation would take the fingernail, the last or furthest bone of the finger, and the joint itself. The procedure would actually go beyond the joint in order to remove the cartilage.
We see then that Doctor Landreneau disapproved of a second fusion and recommended an amputation. Doctor Lazaro recommended a second fusion, but was not questioned about an amputation. The sequence in which the two physicians testified by deposition as set out above, may indicate the reason why Doctor Lazaro expressed no opinion concerning an amputation. But as also set out above, Doctor Landreneaü’s recommendation of an amputation was known at the time of trial. We might say that if Doctor Lazaro had preferred the amputation, he would have recommended it instead of a second fusion. We might also say that his recommendation of the fusion is a tacit disapproval of the amputation, or at least a relegation of it to a second preference. But we cannot afford ourselves the luxury of speculation. We can only consider what is contained in the record. Such being the case, we cannot presume that Doctor Lazaro would have agreed to an amputation any more than we can presume that he would have disapproved of that procedure.
We therefore conclude that plaintiff’s refusal to submit to a second surgical procedure is reasonable based upon a serious disagreement between the surgeons as to the type of operation to be performed.[1]
*50 For the above and foregoing reasons the judgment of the trial court is affirmed, at appellant’s costs.

AFFIRMED.

PAVY, J., concurs in the result.
MILLER, J., dissents and assigns written reasons.

. The author of this opinion would also conclude that plaintiff’s refusal to submit to a second surgical procedure is reasonable in view of his expressed fear, uncertainty, and apprehension about such a second operation. As we said in Bass v. Service Pipe Trucking Company, Inc., 273 So.2d 349 (La.App.3rd Cir. 1973):
“This is not to state, however, that a compensation claimant, under all circumstances, may never be justified in refusing surgery based on fear and concern for his physical well-being because of experiences undergone as a result of previous surgery or surgeries. In each such case the question of whether he is justified in refusing surgery must be determined by the facts of each particular case.”
Plaintiff’s first operation was not successful. The second one may likewise be unsuccessful. I feel that his misgivings about another operation justifies his refusing same.