434 So.2d 621 (1983)
Cleveland FONTENOT, Plaintiff-Appellee,
v.
GREAT SOUTHERN OIL & GAS CO., INC., Defendant-Appellant.
No. 83-106.
Court of Appeal of Louisiana, Third Circuit.
June 29, 1983.
*622 Allen, Gooch & Bourgeois, St. Paul Bourgeois, Lafayette, for defendant-appellant.
Morrow & Morrow, James P. Ryan, Opelousas, for plaintiff-appellee.
Before DOMENGEAUX, GUIDRY and YELVERTON, JJ.
GUIDRY, Judge.
Cleveland Fontenot filed this worker's compensation suit against his employer, Great Southern Oil & Gas Co., Inc. (hereafter Great Southern), for benefits allegedly due as the result of an injury which occurred on November 1, 1980, and for penalties and attorney's fees. The trial judge rendered judgment in favor of the plaintiff and against the defendant, finding the plaintiff to be permanently partially disabled under the worker's compensation act and entitled to penalties and attorney's fees. Great Southern appeals suspensively. Plaintiff neither appeals nor answers the appeal.
The issues on appeal are: (1) whether the trial judge manifestly erred in concluding that the plaintiff is permanently partially disabled under the worker's compensation statute; (2) whether an employer insured for worker's compensation can be liable for penalties and attorney's fees; and, if so, (3) whether defendant was arbitrary and capricious in handling plaintiff's claim.
On November 1, 1980, during the course and scope of his employment with Great Southern, Cleveland Fontenot, a 51 year old driller, fell 14 feet from the drilling rig floor onto the board walk. The accident occurred when the plaintiff was attempting to extricate himself from a block string which was falling as the result of a brake failure.
Plaintiff was taken directly to the emergency room of Lafayette General Hospital where he was examined by Dr. Arthur Vidrine, Jr., a general surgeon. Mr. Fontenot was complaining primarily of pain in his left shoulder and chest. Dr. Vidrine suggested that Mr. Fontenot be admitted to the hospital for observation but he refused. The patient was given medication for pain and told to rest in bed. Dr. Vidrine subsequently examined the plaintiff on November 4, 11 and 18, when he was released to return to work.
Mr. Fontenot continued to suffer with the pain in his shoulder and chest and also began to experience pain in his neck and back. On November 19, 1980, Mr. Fontenot was examined by Dr. Charles Edward Fontenot, a general practitioner and surgeon, who also prescribed medication and bedrest. On November 24, 1980, Mr. Fontenot returned to work for six days but his employment was then terminated. He testified that he worked in pain during that time. This testimony was corroborated by a co-worker. He returned for a follow-up examination with Dr. Fontenot on November 26, 1980, and was released to return to work. He was last seen by Dr. Fontenot on March 13, 1981.
Thereafter, on March 27, 1981, Mr. Fontenot was seen by Dr. John Tassin, a general practitioner in Ville Platte, who referred him to Dr. Charles R. Billings, an orthopedist in New Orleans. He was examined by Dr. Billings on April 6, June 1 and August 3, 1981. During this interval, Mr. Fontenot was also examined by Dr. Fred Webre, an orthopedic surgeon in Lafayette, on April 23 and September 3, 1981, at the request of the defendant.
After considering the medical and lay testimony in this case, in his written reasons for judgment, the trial judge concluded as follows:

"As stated before, Dr. Vidrine, Dr. Charles Fontenot, Dr. John Tassin, Dr. Billings and Dr. Webre examined and/or treated the plaintiff for his injuries. The testimony of Dr. Vidrine and Dr. Fontenot as to the plaintiff's disability and injuries is inconclusive since these physicians examined and treated the plaintiff shortly after the accident, and before plaintiff's symptoms became apparent. Dr. Tassin and Dr. Billings are considered to be the treating physicians of the plaintiff; Dr. Tassin being a general practitioner, and Dr. Billings an orthopedic surgeon. *623 Dr. Webre was called upon to evaluate the plaintiff at the request of the defendant.

The medical evidence is conflicting; however, the Court, in this instance, considering the lay testimony in such cases, giving credence to the treating physicians, and considering the plaintiff's age and his work record and the type of employment, must conclude that the plaintiff was and is disabled, because of his injuries resulting from the accident he sustained while in the employ of the defendant. The Court, in arriving at the conclusion that he is disabled, must consider the fact that the plaintiff has almost a perfect work record as an oilfield worker, having no injuries or workmen's compensation claims to speak of prior to the accident. Dr. Billings, plaintiff's treating specialist, diagnosed plaintiff's condition as traumatic degenerative cervical spine disease and traumatic arthritis of the acromioclavicular joint. Dr. Tassin alludes to this diagnosis that probably plaintiff is suffering from this type of arthritis in the cervical spine and shoulder.
Dr. Billings further stated that plaintiff should be able to return to some type of work as of June 1, 1981, but is of the opinion that heavy manual labor and repeated strain on his neck and shoulders would aggravate or worsen his condition. In view of the above, the Court is of the opinion that the plaintiff has not sufficiently carried the burden of proof that he is permanently and totally disabled as defined by Louisiana R.S. 23:1221(2). Also, the Court finds that the plaintiff does not fall into the category of the odd lot doctrine as the plaintiff could compete in the labor market in some type of gainful employment, since it is clear that he could do some type of lighter work that is required of an oilfield driller or worker. The Court, however, rejects the contention of the defendant that plaintiff was not disabled nor is any longer disabled, and that he should be able to return to his work as a driller in the oilfield type of employment. However, the Court finds that the plaintiff has proven a classic and perfect case of permanent partial disability as defined by La.R.S. 23:1221(3), ..."
The defendant contends that there is no testimony supporting the trial judge's conclusions. We do not agree. We find that the trial judge's evaluations of credibility and his inferences of fact are reasonable and are supported by the record. We, therefore, find no manifest error in the trial judge's finding that the plaintiff proved that he is permanently partially disabled. Canter v. Koehring Company, 283 So.2d 716 (La.1973); Arceneaux v. Domingue, writ granted, 359 So.2d 1303 (La.1978), 365 So.2d 1330 (La.1978), on remand, 370 So.2d 1262 (La.App. 3rd Cir.1979); Bertrand v. Aetna Casualty and Surety Company, 306 So.2d 343 (La.App. 3rd Cir.1975), writ denied, 310 So.2d 641 (La.1975).
The defendant also contends that the trial judge erred in awarding penalties and attorney's fees against an insured employer. We agree. It is well established that under LSA-R.S. 22:658, an insurer is liable for penalties and attorney's fees when it is arbitrary and capricious in failing to pay compensation benefits, and that under LSA-R.S. 23:1201.2, the employer who "is not covered by insurance" is subjected to the same penalty. However, in this case, the only defendant before the court is Great Southern, the employer, and the record reflects that Great Southern was covered by a worker's compensation insurance policy at the time of the accident issued by Northwest Insurance Company. "An insured employer should not be assessed penalties and attorney's fees." Fontenot v. Town of Kinder, 377 So.2d 554 (La.App. 3rd Cir. 1979), writ refused, 379 So.2d 1102 (La. 1980). See also Brock v. Tidewater Construction Company, 318 So.2d 100 (La.App. 3rd Cir.1975); DeJean v. B.F. Trappey's Sons, Inc., 285 So.2d 297 (La.App. 3rd Cir. 1973).
We, therefore, do not reach the issue of whether the defendant was arbitrary and capricious in failing to pay compensation benefits.
*624 For the above and foregoing reasons the judgment of the trial court is reversed insofar as it awarded penalties and attorney's fees in favor of the plaintiff and against the defendant. In all other respects the judgment is affirmed. Costs of this appeal are assessed one-half (½) against the plaintiff and one-half (½) against the defendant.
AFFIRMED IN PART, REVERSED IN PART AND RENDERED.