JiDOUCET, Chief Judge.
In this worker’s compensation action, defendant, R & W Equipment Company, Inc., appeals a judgment of an Office of Worker’s Compensation (OWC) Hearing Officer reinstating plaintiff, Manuel P. Rao’s, temporary total disability (TTD) benefits, plus awarding plaintiff $2,000 in penalties and another $2,000 in attorney’s fees. The issues raised at the OWC hearing and on appeal are the following: 1) Was defendant proper in its action of reducing plaintiffs benefits from TTD to supplemental earnings benefits (SEB)? and 2) Was defendant arbitrary and capricious in the handling of plaintiffs case? We affirm the decision of the OWC Hearing Officer.
REACTS
Mr. Rao injured his back in the course and scope of his employment with defendant, R & W Equipment Company, Inc. (hereinafter R & W), on April 3, 1992, as he attempted to lift the tongue of a trailer mounted air compressor onto a trailer hitch on a truck. As a result of the injuries he sustained, Mr. Rao’s treating physician, Dr. William F. Foster, performed lumbar laminectomies and micro discectomies at L-3/4 and L-4/5 on Mr. Rao on November 17, 1992.
*1004 Following plaintiffs surgery, in January 1998, Dr. Foster wrote to R & W indicating that Mr. Rao was progressing satisfactorily and informing the company that he expected plaintiff to reach maximum medical improvement (MMI) in approximately three more months. Accordingly, on April 22, 1993, Mr. Rao’s case was referred to a vocational rehabilitation specialist, Stanford McNabb.
Mr. McNabb then contacted Mr. Rao, Mr. Grafton, the owner of R & W, and Dr. Foster. According to Mr. McNabb, Mr. Grafton felt that Mr. Rao was a valuable employee and was anxious to have him return to work. Mr. McNabb testified that Mr. Rao was not overjoyed at the prospect of returning to work for Mr. Grafton, feeling that Mr. Grafton had slighted him while he was out with his injury (Mr. Grafton testified that although he and Mr. Rao had gone to school together and were life-long friends, he never visited Mr. Rao the whole time he was hospitalized and convalescing). Mr. MeNabb’s meeting with Dr. Foster yielded a letter and an evaluation form, both dated June 30,1993, which indicated that, in Dr. Foster’s opinion, Mr. Rao had reached MMI and was capable of performing light or sedentary work.
On Thursday, July 22, 1993, Mr. McNabb met with Mr. Grafton. At that meeting, Mr. Grafton allegedly decided to “create” a job for plaintiff in order to get Rhim back to work. A letter, dated June 22, 1993, was drafted to Mr. Rao informing him that Dr. Foster had informed R & W that he had reached MMI and was released to return to work; that he was to meet with Mr. Grafton on Monday morning, July 26,1993, to discuss his new job; to attend an eight hour safety school with Conoco, Inc. on Tuesday; and to begin work as a fuel truck driver on Wednesday. The letter was sent certified mail and received by Mr. Rao on Friday, July 23, 1993.
Upon receiving the letter from R & W, Mr. Rao tried to reach Dr. Foster to confirm the contents of the letter, but was informed that the doctor was out of town. Still trying to get in touch with Dr. Foster, Mr. Rao did not go to see Mr. Grafton Monday morning, July 26, to discuss the new job. He continued to try to reach Dr. Foster. These efforts unavailing, he contacted his attorney, who in turn succeeded in reaching Dr. Foster and in relaying to Mr. Rao the message that he could indeed try to work. Mr. Rao immediately called R & W and accepted the job. He was called back later and told that the job was no longer available. As a matter of fact, the record reveals that R & W effectively withdrew the job offer when Mr. Rao failed to appear for the interview on July 26. Mr. Grafton testified that the next day, July 27, he sent somebody else to the school in Mr. Rao’s place.
R & W had been paying Mr. Rao $295 per week in temporary total disability benefits. On August 3, a little over a week after the job offer was made, and immediately after it was accepted R & W, taking the position that Mr. Rao had refused the job offer, reduced the benefits to SEB of $160 per week.
At trial it was stipulated that Dr. Foster had never released Mr. Rao from his care and that at no time before July 23, 1993, had Dr. Foster discussed with plaintiff under what conditions and/or limitations he would allow Mr. Rao to return to work. Further, an October 19,1993 letter from Dr. Foster to R & Ws workers’ | compensation claims adjuster states that Dr. Foster had only released Mr. Rao to light duty, and that the climbing, bending, and pulling required by the position of fuel or dump truck driver “... are definitely not the type of activities that I would recommend ...” for Mr. Rao. The letter also stated that plaintiff continues to have “... considerable complaints of low back pain with any sort of activity, whatsoever ...” and that “... he has moderately severe muscle spasm to the right of the midline adjacent to his incision.” Dr. Foster concludes that letter thusly: “I don’t believe that this gentleman is capable of returning to work as a dump truck driver or a fuel truck operator/driver. It is my understanding that Mr. Rao called R & W Construction [sic], and a reply from that company was never tendered to him. At this point in time he appears to be [in] limbo with regard to his future activities, if any.”
LAW AND DISCUSSION
In Gary v. D.E. Page Construction, 93-1226, at 7 (La.App. 3 Cir. 5/4/94), 640 So.2d *1005 523, 527, a panel of this court stated the following:
‘Jurisprudence clearly establishes that in workers’ compensation cases, the appropriate standard of review to be applied by appellate courts is the ‘manifest error-clearly wrong’ standard. The same standard of appellate review applicable to actual findings of district courts is also applicable to the factual findings of an administrative body or hearing officer.’ Alexander v. Pellerin Marble & Granite, 630 So.2d 706 (La.1994) (citations omitted). That standard prohibits an appellate court from setting aside the lower court’s finding of fact in the absence of ‘manifest error’ or unless it is ‘clearly wrong,’ and where there is conflict in the testimony, reasonable evaluations of fact should not be disturbed upon review, even though we may feel that our own evaluations and inferences are as reasonable. Rosell v. ESCO, 549 So.2d 840 (La.1989).
The main statute at issue in this case is La.R.S. 23:1226, which provides in pertinent part as follows:
I5A. When an employee has suffered an injury covered by this Chapter which precludes the employee from earning wages equal to wages earned prior to the injury, the employee shall be entitled to prompt rehabilitation services.
B. (1) The goal of rehabilitation services is to return a disabled worker to work, with a minimum of retraining, as soon as possible after an injury occurs. The first appropriate option among the following must be chosen for the worker:
(a) Return to the same position.
(b) Return to a modified position.
(e) Return to a related occupation suited to the claimant’s education and marketable skills.
(d) On-the-job training.
[[Image here]]
F. Temporary disability benefits paid pursuant to R.S. 23:1221(1) [ ... ] shall include such period as the employee may be receiving training or education under a retraining program pursuant to this Section.
In the case sub judice the hearing officer found that “... the job offered to claimant was not offered in the spirit of rehabilitation ...” in that "... the delays [between notification and plaintiffs report date] did not give claimant time to exercise his right to pursue the matter with his doctor and/or seek legal advice.[...] The effect is like no job was offered at all.” Accordingly, the hearing officer concluded that defendant had not met its obligations under La.R.S. 23:1226, and reinstated Mr. Rao’s TTD benefits. We find no clear error in her assessment of the facts, the actions she took, and find the hearing officer’s reliance, by analogy, on Foreman v. West Calcasieu-Cameron Hospital, 625 So.2d 1104 (La.App. 3 Cir. 1993), writ denied, 93-2740 (La.1994), 631 So.2d 450, well placed.
The hearing officer further found that defendant’s actions in this matter were arbitrary and capricious, and that accordingly plaintiff was entitled to penalties and attorney’s fees. It is well settled that a hearing officer has great discretion in the award of penalties and attorney’s fees and that such awards will not be disturbed on |6appeal absent manifest error. See Comeaux v. Grey Wolf Drilling, 93-1289 (La.App. 3 Cir. 5/4/94), 640 So.2d 532, writ denied 94H339 (La. 9/16/94), 642 So.2d 193.
We find no manifest error in the making of these awards. Plaintiff was sent a letter which did not provide him with sufficient time to contact either his doctor or his attorney before he was requested to act. When he did not act as requested, no one from R & W bothered to contact him for an explanation, and when he contacted R & W, in what we consider a reasonable amount of time, to accept the job offered in the letter he was told the job was no longer available.
Appellant argues that its actions were neither arbitrary nor capricious in that a report from Dr. Foster stated that Mr. Rao had reached maximum medical improvement. We recognize that Dr. Foster did make such a statement. However, reaching MMI and being able to return to work at any particular job are not the same. It appears that Dr. Foster had one level of activity in mind when *1006 he stated that plaintiff was ready to attempt to return to work and that defendant knowingly misconstrued Dr. Foster’s statements to its advantage.
Accordingly, for the reasons stated above, we affirm the judgment of the OWC hearing officer. All costs of this appeal are taxed against defendant-appellant, R & W Equipment Company.
AFFIRMED.
WOODARD, J., dissents and assigns reasons.